PITTS et ux. v. ZAVALA–DIMMIT COUNTIES WATER IMPROVEMENT DIST. NO. I.

No. 9537.

Court of Civil Appeals of Texas. San Antonio.

April 3, 1935.

Rehearing Denied May 1, 1935.

Jackson & Crawford, of Crystal City, for plaintiffs in error.

Terrell, Davis, Hall & Clemens and A. V. Knight, all of San Antonio, for defendant in error.

MURRAY, Justice.

Defendant in error, Zavala-Dimmit Counties Water Improvement District Number 1, instituted this suit against plaintiff in error R. B. Pitts and his wife, Ruth Hill Pitts, seeking first a temporary and on final hearing a permanent injunction enjoining plaintiffs in error from taking water for irrigation purposes from Espantosa Lake and cut off channel.

The trial was to the court without the intervention of a jury and resulted in a judgment in favor of the water district, in effect, permanently and perpetually enjoining plaintiffs in error from taking or using water from Espantosa Lake, but allowing plaintiffs in error the privilege of using water from cut off channel for irrigation purposes upon about 60 acres of land bordering upon this channel. R. B. Pitts and wife present this appeal by means of a writ of error.

The trial judge made and filed his findings of facts, which will be here copied in full:

"I. I find that the plaintiff is and since 1925 has been a validly constituted water improvement district, located in Zavala and Dimmit Counties, Texas, having been created under article 3, section 52, of the Constitution and the General Laws of the State of Texas, the validity of the organization of said District and the obligations issued by it having been affirmatively determined in Cause No. 41839, styled Zavala-Dimmit Counties Water Improvement District No. 1, vs. Dan Moody, Attorney General, by a decree of the Criminal District Court of Travis County, Texas, entered in said cause in 1925. The defendants reside in Zavala County, Texas, and the lands and appurtenant water rights incident thereto involved in this cause are located in Dimmit County, Texas.

"II. The boundaries of the plaintiff district embrace approximately 14,360 acres of land lying in Zavala and Dimmit Counties, the Nueces River running in a general north to south direction through the eastern portion of said district, and Espantosa Lake running in a general north to south direction through the western portion of said District. Both of said streams are natural, navigable water courses within the statutory definitions, and plaintiff is the owner of appropriation rights in the storm and flood waters of said streams and their tributaries under permits from the State of Texas, conferring upon plaintiff authority to impound and appropriate a sufficient amount of such flood waters to irrigate 14,000 acres of land in said District. In addition, plaintiff, under valid permits, is the owner of a dam across the Nueces River and the owner of a dam across Espantosa Lake, said last dam having originally been erected in 1913 to a height of five feet by Alexander Boynton, plaintiff's predecessor in title, and said dam having been raised an additional five feet by the plaintiff in the year 1926.

"III. I find that throughout the region surrounding the District, the annual rainfall is scanty and uncertain, the territory being semi-arid, such annual rainfall being insufficient to insure the successful raising of crops. The territory is devoted almost entirely to the raising of vegetables such as spinach, onions, cabbage, turnips, et cetera, and it is indispensable to the proper cultivation of such vegetables to maintain a water supply independent of the yearly rainfall, either by the storage and impounding of flood water in reservoirs, natural or artificial, or by irrigating wells, between 9,000 and 10,000 acres of land within the boundaries of said District are at present in cultivation, and are watered by pumping flood and storm waters impounded in Espantosa Lake and the Nueces River by means of the dams above referred to. The District has at all times since the erection of said dams in the year 1913 to the present time, used all the water impounded therein for the irrigation of crops grown upon lands lying within such District, and has used the channels of the Lake and River for storing such waters.

"IV. I find that the channels of the Lake and River filled to the heights of the dams erected therein on an average of three or four times per year during the fall and spring, said season being the crop growing season, and that said reservoirs are emptied within a very short time by the owners of the lands within such District, who pump water therefrom for irrigation and domestic purposes. I further find that the water impounded in such channels by said dams is insufficient for the proper irrigation of said lands and that the owners thereof are in some instances compelled to supplement such waters by digging wells and pumping therefrom, the cost of such pumping being three or four times as great as the cost of pumping from the channels of the Lake and River. I further find that all of the water impounded by the plaintiff under its permits is necessary to the cultivation of lands lying within such District, and that at this time the owners of lands, some ten in number, aggregating over 1,000 acres, are unable to obtain sufficient water from Espantosa Lake to irrigate presently growing crops. I further find that the land claimed by the defendants is not located within the boundaries of plaintiff District, and that the defendants have no appropriation permits and have made no filings with the State Board of Water Engineers, or any other agency of the State, and are not entitled to appropriate and use any of the storm and flood waters belonging to the State.

"V. I further find that the land in controversy in this cause is described as Section One Hundred Seventy Three (173), of the Cross S. Ranch Subdivision, said Cross S. Ranch originally embracing in excess of 90,-000 acres, and containing the entire area of the present Water District as well as all of the lands claimed by defendants. Section 173 is divided into farms containing ten (10) acres each, and Espantosa Lake runs through said section in a general north to south direction. Section One Hundred Seventy (170) borders Section 173 on the north and at some point in Section 170, there originates a natural water course called Cut-Off Slough (hereinafter called Slough), which crosses the northern boundary of Section 173 at a point west of Espantosa Lake, running in a general southerly direction and emptying into Espantosa Lake at a point in Section 173, leaving between the Slough and the Lake a portion of land somewhat triangular in shape with one angle the junction of the Lake and Slough, said land being generally higher than the surrounding territory, heavily timbered and brushy and never having been cultivated or irrigated.

"VI. I further find that the common source of the title as between plaintiff and defendants was in E. J. Buckingham; that defendants predecessor in title, O. H. Wheat, acquired from Buckingham by deed dated April 6, 1908, those portions of farms 4, 5, 6, 12, 13, 20 and 21, aggregating approximately sixty (60) acres lying on the west side of Espantosa Lake, there being excepted and reserved from the grant, however, a strip of land twenty (20) feet wide, bordering on the lake front, over which the grantee could cross and hunt and fish, but said deed further excepting all rights to the water of Espantosa Lake, particularly for irrigation and commercial purposes. No portion of said land lies within the boundaries of plaintiff District. Defendants claim the portion of said farms above enumerated by deed from Mrs. Belle Wheat, dated June 23, 1928.

"I further find that out of said farms, defendants have placed in cultivation approximately 53.44 acres of land, according to a plat prepared by a surveyor, Mayberry, at the time defendants acquired said land.

"VII. I find that defendants have acquired other farms in said Section 173 in different transactions with parties other than Mrs. Belle Wheat, and at various intervals during the year 1932. The Slough above referred to runs through the land acquired by the defendants from Mrs. Belle Wheat, aggregating approximately sixty (60) acres, but does not touch upon and is not contiguous to any of the farms acquired from other persons in other transactions in the year 1932.

"VIII. I further find that the plaintiff, through mesne conveyances, acquired the fee simple title to a twenty (20) foot strip of land bordering Espantosa Lake on each bank thereof, from a point above Section 173, down to and below the dam erected across Espantosa Lake some three or four miles below plaintiff's lands, together with all riparian rights appurtenant thereto, and that plaintiff is now the owner in fee simple of said strip of land riparian rights as well as appropriation rights in and to the storm and flood waters impounded by reason of said dam so built in Espantosa Lake.

"I further find plaintiff's title to strips of land bordering and enclosing the channels of Espantosa Lake and Cut-Off Slough, under mesne conveyances from E. J. Buckingham, as defined and marked by cement filled iron stakes described in such deeds, which ex-

ceeds a strip twenty feet in width on the west bank of Espantosa Lake, is inferior to plaintiff's title to those portions only of Farms Nos. 4, 5, 6, 12, 13, 20 and 21 lying west of Espantosa Lake, aggregating approximately 60 acres acquired by defendants in 1928 from Mrs. Belle Wheat, save and except as to a strip of land twenty feet wide bordering the west bank of Espantosa Lake through said enumerated farms, to which twenty foot strip plaintiff has a superior title. As to any remaining lands or farms acquired by defendants by subsequent transactions with different parties in the year 1932, and lying in Section 173, the title of plaintiff to those portions of Section 173 bordering Espantosa Lake and delimited by said iron stakes is superior to any claim of title by defendants; and that as to said strip twenty feet wide, bordering the West Bank of Espantosa Lake in said enumerated farms and as to said strip defined by stakes on the banks of Espantosa Lake in said other farms plaintiff has fee simple ownership, together with all riparian rights in and to the waters of said Lake.

"IX. I further find that Cut-Off-Slough has existed for more than twenty years, but that after the erection by plaintiff of the dam in Espantosa Lake and after the raising thereof to its present height in 1926, and through the agencies of storm and flood water, said channel was washed out and deepened until at some unknown date in 1928 or 1929, the defendants installed a pumping plant on the west bank of the Slough, with an intake pipe leading down to the bed of the Slough, both being about a distance of 132 feet north of the point where such Slough empties into Espantosa Lake, such pumping plant and intake pipe beinng maintained at said point from and after such date, and being the only pumping plant and intake pipe ever erected or maintained by defendants on any of the lands owned by such defendants in Section 173.

"I further find that at some date unknown in the crop year 1929–1930 or 1930–1931, after the drought had set in, a tenant (Speedy) of defendant's dug some character of artificial ditch or channel in the bottom of the bed of Cut-Off Slough leading from the intake pipe of defendants' pumping plant down to and intersecting the channel of Espantosa Lake some 132 feet; that thereafter said channel became filled up or partly filled up until on or about November 21, 1933, when defendants dug a new artificial channel or reopened the former artificial channel ih the bottom of Cut-Off Slough by making an excavation from one and one-half to two feet wide and from three to five feet deep, by means of which Channel the waters impounded in Espantosa Lake were led back from such lake to the mouth of the intake pipe of defendants' pumping plant, said pipe having been lowered to the bottom of such artificial Channel; that if no channel had been dug or reopened, no water from said Lake would flow back to such pumping plant, the natural bottom of said Lake being lower than the natural bottom of said Slough, no evidence being offered of the volume, acreage or time of use of such water by said Speedy.

"X. I further find that the reservoir created by plaintiff's dam in Espantosa Lake is filled by flood or storm waters an average of three to four times yearly, such waters flowing down from the north and such waters filling said channels immediately when said floods occur; that the said floods bring down an enormous amount of water and frequently cover the entire area of the plaintiff District and spread over the defendants' lands to a depth of as much as ten feet, and at times being a number of miles wide ; that said floods and freshets run off within a very short interval, generally from one to two days, and the only water left after they have subsided is the water impounded by the dam in said Lake; that apart from said floods, the said Lake has no regular or continuous flow, and the only water therein consists of water lying in pools in the bottom of the said Lake; that at the time of this trial, the said dam in Espantosa Lake was impounding no water, and the waters in such Lake were contained in pools of uncertain depth and varying length and capacity; that when said flood waters have been emptied from the reservoir created by the dam in Espantosa Lake to a point where said dam no longer impounds flood water, the Channel of Cut-Off Slough is practically dry and may be crossed by walking thereon, the only water remaining therein being small pools of no consequence or value for irrigation. At such times the artificial channel dug or reopened by defendants in the bed of Cut-Off Slough from his pumping plant and through the twenty foot strip bordering upon Espantosa Lake causes the water in such Lake to flow back in a northerly direction into such channel to the intake pipe installed by the defendants, and that if such artificial channels did not exist, the waters of Espantosa Lake would not be available for defendants' use.

"I find that apart from the storm and flood waters which may flow down through such Slough, there is no regular flow of riparian

water through said Slough sufficient in amount to be of any value for either domestic or irrigation purposes.

"XI. I further find that in the year 1932, the defendants irrigated 178 acres of land and in the year 1933, the defendants irrigated 240 acres of land by means of said pumping plant above mentioned."

The above findings of facts were sufficient to support the judgment and, if supported by the pleading and proof, would require an affirmance of the judgment of the trial court.

By the first proposition of plaintiffs in error, complaint is made that defendant in error only pleaded that it owned a strip of land 10 feet wide along the west bank of Espantosa Lake, while the trial judge found that it owned a strip 20 feet wide. This presents no error prejudicial to the rights of plaintiffs in error, so far as the effect of this judgment is concerned. Whether defendant in error owned a strip 10 or 20 feet wide along the west bank of Espantosa Lake, it would be entitled to the injunction.

By the second proposition of plaintiffs in error complaint is made that the evidence does not support the finding that defendant in error was the owner of a strip of land 20 feet wide along the west bank of Espantosa Lake. It is admitted that the evidence does show that defendant in error is the owner of such a strip varying in width from 5 to 44 feet. It would make no difference whether or not the strip was 5 feet wide or 44 feet wide, in view of the fact that the evidence does show that plaintiffs in error do not have any right to use water from the lake for irrigation purposes and that defendant in error does own a strip of land of substantial width between the top bank of the lake and plaintiffs in error's land.

The disposition made of the first and second propositions require that propositions 3 and 4 be also overruled.

Proposition No. 5 of plaintiffs in error will be overruled. There is no ground for the contention that a strip 20 feet wide along the bank of the lake was not excepted out of the grant made by E. J. Buckingham to plaintiffs in error's predecessors in title. The deed contained the following language: "Reserving, however, twenty (20) feet from the top bank of the Lake which is not conveyed but reserved by the said E. J. Buckingham out of this conveyance," which was sufficient to except out of the grant a strip 20 feet wide measured from the top bank of the lake.

By their sixth and seventh propositions plaintiffs in error contend that the prayer contained in defendant in error's petition is insufficient to justify and support the judgment rendered by the trial judge. We overrule this proposition. The relief granted is sufficiently asked for in the petition.

The eighth proposition of plaintiffs in error is also overruled. The relief granted is justified from the evidence and the findings of fact by the trial judge.

In view of the fact that this is not a "Trespass to Try Title Suit" and in view of the fact that defendant in error did not allege that it was the owner of a 20-foot strip of land bordering Espantosa Lake on the west side, but only alleged a strip 10 feet wide, the judgment of the trial court will be affirmed without prejudice, however, to the rights of the parties to maintain a suit, if either should desire to do so, to definitely fix the boundary line between the land belonging to plaintiffs in error and that belonging to defendant in error.

Affirmed.